Mark McCulloch, Counsel, U.S. Department of Justice of the U.S. Department of Justice, and I'll just refer to them collectively as Jarkesy. Can you maybe move the mic a little bit so we can hear you better? Yes, Your Honor. Thank you. Does that help? Two hundred and fifty years ago, Blackstone predicted we would be here. He wrote in Volume 4 of Commentaries that the inroads upon the sacred bulwark of the Seventh Amendment are fundamentally opposite to the spirit of our Constitution and that though begun in trifles, the precedent may gradually increase and spread to the utter disuse of juries in questions of the most momentous concerns. More recently, now Justice Kavanaugh, in 2017, decried the SEC's what he called persistent efforts to end-run the Supreme Court and push the envelope, his words, constitutionally, and that this whole agency-centric process as it's evolved is in tension with Article 3 of the Constitution, the Due Process Clause of the Fifth Amendment, and the Seventh Amendment. In this case, Your Honors, all those lines have been crossed and all of those issues are presented. This grant of dual jurisdiction in Section 929PA of Dodd-Frank at the same time strips a citizen of his Seventh Amendment rights, his Article 3 rights, his equal protection rights, his due process rights, and contravenes the separation of powers doctrine. It's all one big issue with a lot of tentacles. So, the Seventh Amendment issue comes down to whether or not the public rights doctrine justifies the Article 3, the Article 1 assignment of anti-fraud enforcement actions against ordinary citizens who are not regulated. You're making new law here, aren't you? I mean, the law as it exists clearly gives Congress the right to set up an enforcement action under a statute for a non-Article 3 judge to adjudicate an enforcement claim without a jury. I mean, so you're arguing for new law, as I understand it. Your Honor, respectfully, we're not arguing for new law. We believe this is consistent with the law. In this exact context, this is a question of first impression because in this precise context under Dodd-Frank, we don't know that this issue has been pressed before. Do you have any Supreme Court authority that Congress is without authority to authorize an agency to proceed with an enforcement action provided under a statute in a non-Article 3 court without a jury? Do you have a case that says that? Yes. So starting with Crowell v. Benson back in 1932 where the public rights doctrine was first birthed, the court held that the public rights doctrine would only apply to actions between the government and persons subjected to its authority. In the Northern Pipeline Court in the 80s, this is a quote from the Supreme Court in Northern Pipeline which struck down the bankruptcy courts. The doctrine extends only to matters arising between the government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments and only to matters that historically could have been determined exclusively by those departments. What about since Atlas? Do you have anything since Atlas? There's plenty of case law since Atlas and as our briefing tried to explain, Atlas roofing has been so watered down and was watered down within a few years that by the end of the 80s even its author, Justice Byron White, admitted that the key parts of the opinion had been overruled and he decried that but he finally gave up in an exasperation, said that he's mystified by the whole area and it really comes down to in his judgment was all a big tautology. In Thomas v. Union Carbide, the court rejected the notion that Article III has no force simply because the dispute is between the government and an individual. In the Shore case in CFTC v. Shore, 1986, the court abandoned the public rights test in favor of a four-part test for constitutionality of Article I assignments and in Grand Financiera where the court said even juries could even be required inside of an Article I proceeding. Well, they just said that that dispute didn't involve a public right, didn't it? Correct and so it's the way that the court defined the Supreme Court has come since Atlas Roofing to define public rights and allow for an Article I assignment. It has to be situations where the Congress has created a new cause of action and remedies therefore unknown to the common law. Traditional rights and remedies were inadequate to cope with the manifest public problem, allowing Article III to adjudicate would go far to dismantle the statutory scheme and would impede the swift resolution of the claims and also whether Congress gave careful consideration to the constitutionality of the Article I assignment. But the kicker is this, Your Honor. The court held, quote, unless Congress may and has permissibly withdrawn jurisdiction over that action by courts of law and assigned it exclusively to non-Article III requests. But can you give me a case where the court has said that Congress does not have authority whether it's statute and there's enforcement action to assign that to an Article I court or a non-Article III judge? Well, okay. Stern v. Marshall in 2011 where the court held that a counterclaim in bankruptcy could not be tried outside of Article III and in that case the claimant consented to the bankruptcy court's jurisdiction so they allowed it. That's Stern v. Marshall? Stern v. Marshall. Yes, Your Honor. And the lessons we learned from all the cases is that the Seventh Amendment rights cannot be denied unless there's a proper assignment of a claim to an Article I court in the first place. There's no longer any bright line test for determining the constitutionality of an Article I assignment. The mere fact that a claim is between the government and an individual is not determinative. Does your argument depend upon us analogizing this to common law fraud? It depends in part on analogizing this to common law fraud. Could you please do that? Okay, great. Your Honor, the anti-fraud provisions in the securities laws are codifications of actually ancient common law claims. And in modern practice, the SEC is more or less prosecuting these as proxies for defrauded investors. And when the securities laws were enacted back in the 1930s, they created a structure for both government enforcement and for private causes of action, more or less under the exact same standards. And the fact that these are not new causes of action unknown to the common law is what is one of the factors that makes an Article I assignment unconstitutional, as in violation of Article III, the separation of powers. If we were to agree with you on this jury trial issue point, what result? What result? What result? What's the relief that we would give? Well, the relief is to set aside this proceeding because, JARCASI, we requested a jury trial before the hearing. We requested it during the hearing, requested it after the hearing and the appeal, and we were never granted our right to a jury trial. And it would be limited to this proceeding? Well, it would be limited to this proceeding. Now, you wonder, are we asking this court to overthrow the whole administrative trial process among all the agencies throughout the federal government? I do wonder that. Well, and that's a good thing to wonder as to what the ramifications of a decision here would be. I would say two things. One is I think that the SEC is the only, like I said, the kicker here is the dual jurisdiction. It's the non-exclusivity. Every single time, the only thing that's consistent about the Supreme Court's jurisprudence on public rights and the Seventh Amendment is that every time they talk about it, they say the assignment to an Article I court must be exclusive, only to the Article I court. It can't be both. The SEC is the only place where you have both, with a few exceptions that allow the target to opt out of the administrative process. This is the only court— It says that Congress doesn't have authority to set up a dual system. Correct, Your Honor. Where do you get that from? The fact that they have always required exclusivity, the fact in every single case, I believe even in Atlas Roofing, they said that the assignment must be exclusive to the Article I court. You can't do both. What case are you talking about? I'm talking about everything from Atlas Roofing through Northern Pipeline, through Thomas v. Union Carbide, Grand Financiera, Stern v. Marshall. All of them have required exclusivity. But they never said it was required to be exclusive. They have said that it must be— Okay, if you go back to Oceanic Steam, of which we cite in the brief, that's probably 100 years ago, the Supreme Court specifically held that Congress placing new statutory enforcement actions under agency of adjudication is a matter exclusively within congressional control, particularly within the authority of the executive department, and that the assignment must be exclusive. And that has been repeated through all of the case law. The fact that Congress, in fact, very little legislative intent that you can glean from any of this was a short paragraph that we quote in the briefing where they said this was intentional. They set it up to be dual jurisdiction so that the SEC would have the choice of which forum. I thought you were going to mention the Tull case when the chief asked you about analogizing to a fraud claim. Okay, and the Tull case was, I think, a Clean Water Act case, which involved— Going back to Tull, that may have involved also common law claims, but in that case, the government is seeking penalties against an individual. Now, that was in an Article III court. The question was did the judge have to give that issue on penalties to the jury. Right, and the court held that in the Article III court, the penalty was analogous to a fraud claim, and on liability that it had to be tried to a jury, right? Okay, that's a better answer than what I get. But the critical thing to me is they dropped a footnote and said the Seventh Amendment is not applicable to administrative proceedings. So presumably if this had been brought in an Article I court, that wouldn't have been true. And I would say, Your Honor, in response to that, that whether it's available— You're right. Jury trial is not available in an Article I proceeding, but it begs the question of whether the Article I assignment in the first place was legitimate, whether it was a proper assignment. Just like you don't have the jury in the bankruptcy, you need to get it to a court that could do the jury. Correct. It's the same thing. And so back to your question about how much it would impact. The only place where you have dual jurisdiction is with this 929. So if you said it's not a public right because it has dual jurisdiction and there's ample private enforcement, it would narrowly apply. Still not completely narrow, but it would be narrow to the SEC. It would be narrow to the SEC. And in terms of the impact, as we quote in the brief, you can find from public records over the last several years, the five ALJs for the SEC have averaged 2.5 contested fraud trials per year collectively among all five of them. So you're talking about— So it's a small amount. So just like when the bankruptcy court needs to withdraw the reference if there's some kind of matter that—withdraw the reference to the bankruptcy court in certain matters. And it's the same kind of situation. Could you talk to us about the Purnell case a minute? Your Honor? Purnell case. Purnell case. Yeah. That's the case where the Congress legislating for the D.C. District of Columbia had a statute that had superseded another statute that required a jury. And so the court held that since they didn't put the jury requirement in, a jury trial wasn't needed. So the question was whether in this suit in effect a state court on a common law claim required a jury. And they said, yes, it did. Traditionally, it was a common law claim. But then they went on to say that the Constitution would not be a bar to a congressional effort to entrust landlord-tenant disputes, including those over possession, to an administrative agency. Since Congress had committed those suits to ordinary courts of general jurisdiction and the action involved rights and remedies recognized in common law, the jury trial right must be preserved. So doesn't that case establish that if the SEC has the option to bring the matter in an Article III court or an Article I court, then if they opt to bring it in the Article I court, they're not entitled to a jury. It just depends on which forum the case is brought in. Well, correct, Your Honor. But again, begging the question of can Congress commit it to an Article I forum in the first place, which the court in that case said they could have. But then they've got to release Article III from that subject matter of those claims entirely because of the exclusivity requirement that permeates all the case law. I would like to give everybody two additional minutes. We haven't talked at all about that. Have you answered Judge Davis' question? Because we haven't talked about removal restrictions at all. Are you arguing that? We are arguing that. I would love to touch on non-delegation. I have a question about the Supreme Court's decision in free enterprise, which devotes a significant part to the fact that the PCAOB board members are having significant executive functions. I'm wondering whether the SECALJs do likewise or are they more adjudicative in nature? They are mostly adjudicative, but the court in Lucia held that they were, in fact, constitutional inferior officers with all of the significance of that appertaining. The free enterprise case established that multiple layers of tenure protection are unacceptable and unconstitutional, contributing to separation of powers. That was before Lucia held that the ALJs were indeed constitutional officers having to do with whether they needed to be sworn in and appointed as such. So the double-for-cause removal protections inhibit the President's ability to faithfully execute the laws, then? Well, yes, Your Honor, because the President has to have the authority to fire at will his employees. And the way that this structure has been set up by Congress, you have if the President wants to fire an ALJ, for example, he has to go to the Commission, which is protected. It's assumed it's protected with tenure protection. It can only be fired for inefficiency, neglect of duty, or malfeasance. Then the Commission has to go to the Merit Systems Protection Board, and under 5 U.S.C. 1202D, they're protected by inefficiency, neglect of duty, or malfeasance standard. And then they have to go try to fire the ALJ, but they can only do that for good cause. So you actually have three layers of protection, tenure protection. In free enterprise, the court made clear two layers are unacceptable. One layer is okay. Two layers is too much. Now, do we reach this issue if we reach the other issue first? How does that work? Anticipating that question, we believe because these – except for the prejudgment claim, that they're all basically structural constitutional questions. And if we ended up back in front of the SEC in any way, shape, or form, these issues are still going to be there. They have to be fixed and addressed by this court now. So if we think that the court actually does need to address each of them, we think that the prejudgment claim, we think that's solid and that by itself necessitates setting aside the proceeding. But certainly with regard to the inherent structural problem that's created by the dual jurisdiction of non-delegation and the equal protection problem that that also involves because it's a fundamental right and discrimination in a fundamental right is strict scrutiny under equal protection law. We don't think they can get around that. I think that you've answered my question. Did you think we have to reach all the issues even if you prevail on any one? And I was not foreshadowing. It was just an assuming arguendo. Sorry, that was a long one. You saved time for rebuttal. Thank you, Your Honor. Thank you. And please support Daniel Aguilar for the Securities and Exchange Commission. So starting with the Seventh Amendment argument, I take opposing counsel to be making— It's up to him. You're welcome to wear your mask or not as you prefer. Thank you. I take opposing counsel to be making a slightly broader argument that I had understood in the briefs. As I understand him here today, he's saying that the fact that the SEC is adjudicating violations at all itself violates the Seventh Amendment. So notwithstanding the fact that the SEC could seek equitable disgorgement, a restitution, a cease and desist order, other equitable remedies, he's saying that those have to be adjudicated in an Article III court. So that's a surprisingly broad claim. It's saying that because the statutory violations here can be somewhat analogized to common law fraud, that all of it has to happen in district court and none of it can happen in an administrative proceeding. Right. I think they know they're making a really broad claim. They started with Blackstone and they have all these amici that say they're making a broad claim. I mean, that's—yes. I mean— So we have to decide whether it's a correct claim or not. But at a fundamental level, Your Honor, that's inappropriate because the Supreme Court's made repeatedly clear, specifically for claims arising in equity, that those don't need a jury trial, right? At the founding, there was a clear demarcation between actions at equity that could be tried to the bench and actions at law that needed a jury. And if it's an action at equity like a cease and desist order, disgorgement, restitution, those don't need a jury trial. So I think that part of the claim just falls out at the threshold. But to the question of whether or not you can pursue a legal remedy, a money penalty in an administrative proceeding, what I didn't hear opposing counsel talk about was this court's decision in Austin v. Shalala, which implemented and applied Atlas Roofing. Austin v. Shalala was a case about Social Security disability or survivor benefits. There, the applicant lied about their marital status and got about $25,000 worth of Social Security benefits that they didn't— Mr. Dagmar, you're free to leave that mask on, but I can't hear you. Your Honor, I would prefer to leave the mask on. Okay. I'm just going to let you know. I will try to enunciate better. There, it was a case about $25,000 in wrongly paid Social Security benefits. This court held that that was a legal claim and could be adjudicated in an administrative proceeding without violating the Seventh Amendment because applying Atlas Roofing, it was a public right. It was a question about whether or not that was an action that would exist at the founding, and this court said that it wasn't, but that Congress has free reign to create new statutory rights involving taxation, benefits, immigration, and specifically commerce. Here, obviously, Congress has and has used its authority over interstate commerce to regulate securities offerings to protect the public, to protect investors, to have open, clear, and efficient markets. Why isn't this like common law fraud? And the fact that it already is available in Article III, why doesn't that cut against your argument? It's available in both, Your Honor, and Congress granted that discretion to the Commission on how to bring. Analyzing it to common law fraud isn't exactly a clear mapping. Is it better than disgorgement? And are these remedy claims that you were just talking about in equity? So as I take it, the violation, they say everything that the violation is is really fraud, so all of it needs to be in Article III. I don't think they have any precedent to really square for that point. But just going to what the violation is... You have precedent to the contrary. Yes, Your Honor. This court's decision in Austin v. Shalala, Atlas Roofing, Gran Financiera, all of those say, and Gran Financiera says this at page 52, that Congress can create a new statutory claim quote, closely analogous to a common law right that might have to be tried to a jury. But so long as it's just closely analogous and it's otherwise a new public right, one that Congress created under its Article I authority and is brought by the government, that that is something that can be adjudicated in an administrative tribunal. And as this court held in Austin v. Shalala, if a claim is legal in nature and asserts a public right, oh, sorry, that's Gran Financiera, the Seventh Amendment does not entitle the parties to a jury trial if Congress assigns its adjudication to an administrative agency. What is the difference between the SEC offenses here and common law fraud? You point out in your briefs there are differences, but I'm curious what they are. One is that you don't need to prove loss at all. The fact that you make a material false statement is sufficient to prove a violation. Two is the level of scienter. You don't need intent. Recklessness is sufficient because these are things designed to protect the public. We don't want people making reckless false statements. Even if it doesn't cost anybody money, it's still a statutory violation. Can you get a civil penalty for $300,000 without showing loss? I think so, especially if you showed loss. That would certainly be an aggravating factor. And if somebody said, I shouldn't have gotten that $300,000 penalty because there wasn't loss, there wasn't intent, that would be a claim based on substantial evidence or something akin to that. I'm curious if it would be a civil penalty if it wouldn't be a criminal penalty. I mean, if the loss is zero and the SEC says give us $300,000, maybe you could do that as a criminal penalty. I have questions about that too, but I'm not sure it would be. I thought the whole point of the civil penalty was supposed to somehow tie the loss to the amount the SEC recoups on it. So on the loss, if somebody flagrantly makes a bunch of really false statements and is putting millions of dollars at risk, and then they happen to have a lucky day and they make people money, I mean, that's still a serious concern about a violation of securities laws and protecting the public. So I could imagine some scenarios where a significant monetary penalty might still be warranted just because somebody had a lucky day betting on the stock market. Can I back you up to your first answer to Judge Elrod's question when you were talking about the discretion under 929P subsection A? Do you think that 929P subsection A has an intelligible principle? So I don't think it needs one. So to be clear, that's just the provision that provides for some civil remedies in administrative proceedings. The choice about whether to bring an action in an administrative proceeding or a district court has been with the SEC since the inception of these acts. 100%. So my question is simply, the new provision in Dodd-Frank that gives you, the way you describe it on page 51 of the red brief is, quote, absolute discretion to choose between one form and the other. I take that to say, no, there is no intelligible principle. We have, quote, absolute discretion to choose between forms. Similarly, like, for example... I'm sorry, I don't mean to be difficult. Is that correct? Yes, the SEC has discretion. Similarly, if you want another analogy, some criminal conduct might give rise to a felony charge or a misdemeanor charge with no jail time. The felony charge gives you a right to a jury trial. The misdemeanor charge does not. But there's no need to have an intelligible principle about which one to decide. That's prosecutorial discretion at its core. So absolute discretion. I'm sorry, did you have something? Go ahead. I just want to make sure. If you had exercised your absolute discretion to bring this exact case in federal district court, Mr. Jarchese would have had a right to demand a jury trial. Yes, that's what Austin holds. So if I understand your position... Well, actually, I mean, obviously, Austin doesn't involve absolute discretion under Heckler. So I guess what I'm concerned about is your view of the Seventh Amendment is that you have not only discretion to choose whether he gets a jury trial, but absolute unreviewable discretion under Heckler to determine whether he gets a jury trial. So you're talking about the choice between forms. You can bring the exact case for the exact claim in two different forms, one where he gets a jury trial, one where he does not, and that is committed to discretion under Heckler. Yes. And what case says that? So just first on, like, the equal protection claim. So I think this has two components. First is an equal protection claim, and the seventh is, I guess, this argument about Congress can't grant it to both. It needs to exclusively assign it to one. So taking the equal protection claim, that, I think, is a Supreme Court's decision in Enquest. Enquest versus Department of Labor of Oregon, I think it was. But that's where the chief justice essentially says, look, if what you're talking about is prosecutorial discretion and the decision to bring a case at all, right, or not even face enforcement, you cannot attack that subjective, individualized decision on the fact that it's just subjective and individualized. That is something that is committed to agency discretion. Completely. So I think what— So my question is, how can you use that proposition, unquestioned since Heckler? You get to choose whether to pursue Mr. Jarchese or not, or whether to pursue Ms. Cochran or not, or whoever. You get to choose. But my question is different, which is, you get to choose in a forum where he has a Seventh Amendment right, or you get to choose a forum where you have a 100% win rate and he doesn't get a jury right. And my question is, why does Heckler stand for that second proposition, which is unquestionably different than Enquest? Again, it's not a 100% win rate. It was at the time of this suit. It wins many cases. It's the fact that it often brings cases that are backed by substantial evidence. But going back to Austin, they talk about this dual track on page 1177. The court held that even if the Seventh Amendment would have required a jury where the adjudications of those rights is assigned to a federal court of law instead of an administrative agency, you can still have that adjudicatory proceeding. And I think their opposing counsel is saying that this is unique to the SEC. That's not true. The FTC can similarly bring adjudicative proceedings and actions at district court. And I think in terms of larger sense, their theory potentially implicates the tax court as well, right? For tax delinquencies, those can be brought either in district court or in the tax court. And so to say that, well, that claim's legal in nature, you're seeking a recruitment of money that was wrongfully withheld, and therefore you can only bring those kind of claims in district court, I think would be a novel proposition that isn't supported by any of the precedent that they cite. And if somebody has paid their taxes, as I understand it, you still have the ability to go to either forum in that case. But everyone agrees that that longstanding proposition of being able to adjudicate that either in district court with the jury trial or in the tax court without one is consistent with the Constitution. Okay. Can you address a caution in Grand Financiera? You're right up against it to me, it seems. Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing inclusive authority in an administrative agency or a specialized court of equity. You said it could be, you know, substantially similar, right? When does it, what's the difference between so, so near and it's the exact same thing? When does it trigger the Grand Financiera under your way of looking at this? I think it's what Atlas Rupin talked about too. Claims that were strictly preexisting in property law, tort law, contracts, things of that nature are usually going to be pretty clearly common law claims. Fraud. Yes, and as here, as we talked about, it's closely analogous, but it's not fraud. You don't have to prove intent. Where's the line? I think the line is going to be dependent on the particular case. I could, I guess as an example, just thinking of one false claims act, right? So where do you think one is that has to have a jury trial? Can you think of one? I'm sorry, I didn't hear the question, Your Honor. Think of one that goes over the line. So one, for example, of a false claims act proceeding, right? False claims act is fraud. It is saying that you intended to and did defraud the United States. But you have to have a jury for false claims act, but not for SEC fraud. Because it's fraud or it's prophylactic, as this court and the Supreme Court. Because it's fraud, what? I'm sorry. Because it's prophylactic. It's not just going after common law fraud. It's broader than that. As the Supreme Court explained, it's not just conduct that dishonors. It's conduct that tempts dishonor. The fact that the commission established in the adjudicative proceeding that petitioners actually did lie about particular offerings and received additional benefits because they mislabeled what the hedge funds actually possessed goes to show the egregiousness of that conduct. But the fact that they could have taken lesser action and still violated the securities laws, the fact that they went over that and did even more doesn't entitle them to a jury trial, when lesser conduct clearly would not. I thought the crux of the Financiera case was that the court concluded that the suit by the trustee against a third party to recover money fraudulently paid was not a suit on a public right. That's exactly correct, Your Honor. I mean, it wasn't a matter of whether it was, you know, the nature of the claim as much as the public right, wasn't it? That's right. And, Your Honor, Justice Scalia writing in his concurrence explained public rights are those, at a minimum, which occur between the government and other individuals. Well, that's just a sin. I mean, that's not... No, that was a concurrence, Your Honor. ...charter opinion itself, though, is there? And what does... what Grand Financiera said, I think, at page 54, is the Seventh Amendment only applies if it is a statutory right not closely intertwined with a valid regulatory scheme and if the right neither belongs to or exists against the federal government. So here, where it is closely intertwined with the entirety of the securities laws, it is brought by the federal agency in an administrative proceeding. That's the core area where the Seventh Amendment does not impede Congress's ability to assign that adjudication to an administrative tribunal. It's... I'm wondering... I mean, your answer about the FCA, I realize you came up with it on the fly, so I don't mean to hold you to it, but it does strike me that you're turning the doctrine upside down, right, because in the FCA, that's way closer to a public right in the sense that the fraud runs against the government, right? The qui tam relator is trying to vindicate a fraud against the public fisc in a way that that's not what's going on here, right? Mr. Jarchese did not allegedly lie to the government. He allegedly lied to other people, and you're vindicating other people's rights, not the government's rights. Your Honor, I think that underscores why this is a public right. It's not the United States saying that we have been harmed and we need compensation for our own injuries. It's saying, you have violated a congressionally enacted statute to protect investors, to protect the public at large. Just like in Atlas Roofing, where it didn't matter if a particular employee was actually injured. What mattered was that you violated Congress' statutes to have a safe workplace. And the United States vindicates that right, not because it has been injured, but because it is pursuing the enforcement and imposing monetary penalties on a statutory violation. Perfect. So let's take that exact example that you just gave. You're protecting the public, right? As soon as I hear you say that, I instantly think that's the purpose of criminal law. So could Congress pass 929Q and this is a new statute, call it the Bernie Madoff Enforcement Act or something, and give the SEC the power to do exactly what you did in an administrative proceeding, but get criminal penalties? No. Why? I think that would involve the Sixth Amendment's right to an impartial jury for criminal trials. Why is the Sixth Amendment jury right different than the Seventh Amendment? Because as I understand it, what the Supreme Court has said is that those don't overlap. The Seventh Amendment is analyzed in its own way. It's preserving of rights that as existed at the founding and it doesn't have the criminal penalties. And what this court explained expanding upon that in Austin v. Shalala is that the government can, for statutory violations, impose monetary penalties in civil proceedings. But if they said the exact same, you know, so we go back to the example you gave me earlier in the argument, which is zero loss but some sort of penalty. If they just called that a criminal penalty, literally just changed the label of it. So you're doing exactly what you're doing now and you can do it in an ALJ proceeding in front of the SEC but it's now called a criminal penalty. That's not okay? I think, yes, Your Honor, because civil and criminal rights are analyzed differently under the Constitution. That's why they're codified in different amendments. So what's the difference between a zero loss $300,000 criminal penalty and a zero loss $300,000 civil penalty? I think the difference is which amendment applies to that, right? Rights differ depending on which amendment they're analyzed under. But now we've wandered way far away from, well, Congress is trying to protect the public. I thought the whole way that you were answering Judge Davis's question was that, well, this is a statute where Congress is trying to protect the public. But then you say, well, now we need to turn back to the text of the constitutional amendment to differentiate the way Congress is protecting the public. Your Honor, I'm not making an argument that criminal penalties could be brought in an administrative proceeding. And to the extent that you're asking why, my answer would be that the amendments differentiate those. If your question is, why is a civil penalty appropriate under the Seventh Amendment, I rely not just on the text of the Seventh Amendment but the way that this Court and the Supreme Court have interpreted and applied that amendment. But so it's all on the label. It's not all just in the label. It's the way that this Court has construed it. You're seeking a legal remedy, right? If you're only seeking equitable remedies, you don't get a jury trial. Okay. So now you're, we have all of those equitable remedies, which I don't think there's any basis for throwing those out. Now you're also seeking a fine. The question is whether it's a public right. And the way that the Supreme Court analyzed that both in Atlas Roofing and Grand Financiera and that this Court adopted in Austin is, is it something that's basically in Congress' Article I authority? That's at Austin at page 1177. They can... Can you talk about removal restrictions and equal protection? Sure. So on the removal restrictions, we think that the ALJ removal restrictions at 5 U.S.C. 7521 should be construed to ameliorate any constitutional concerns. To allow for the removal of an ALJ for good cause, for misconduct, poor performance, or failure to follow a lawful order. And that the MSPB's role in analyzing whether or not there's good cause should be limited to determining whether there's a factual predicate for that good cause and not on deciding whether or not a lesser sanction such as a reprimand ought to be, ought to be imposed instead of removal. With that construction, which is fairly capable by the statutory text, we think that permits the president sufficient control over the executive branch. What case do you have that says double good, double poor cause removal protections are okay? So free enterprise fund at page 507 and footnote 10 on the same page. Double poor cause removal in a different context where they're not, they're doing adjudicative functions rather than executive functions. So what footnote 10 on page 507 of free enterprise fund says is that, first it says we're not making general pronouncements about matters here not briefed. And then footnote 10 says and specifically for ALJs we are not deciding their removal restrictions. It says for two reasons. One is that we don't know whether they're officers. The Supreme Court later decided that. But then two is they have particular adjudicative functions which may make the analysis different. And in his opinion in the DC circuit in free enterprise fund, then Judge Kavanaugh explained that I think very likely the ALJ removal restrictions are constitutional both because the commission has the ability to decide whether to use ALJs in the first place and also due to the discreet narrow adjudicative functions that they exercise under delegated authority. And similarly on this question in the 9th circuit in the case we cited in the 28J letter Decker-Cole held that the removal restrictions at 5 U.S.C. 7521 are constitutional consistent with the explanation that we've given here. So what about whether there's an equal protection problem within the SEC civil enforcement actions? One of the briefs refers us to the Gupta, a couple of them, the Gupta case and the idea that you can, if you pick which track for the same people in the same scheme for lack of a better term, that's, they're getting treated completely differently and that's completely discretionary and why doesn't that violate the equal protection? So both, as I said, under inquest, you can't attack the prosecutorial decision on using that prosecutorial authority because it's subjective and individualized. As this court said in NRA United States, the basis for attacking that kind of equal protection claim is discriminatory effect and discriminatory intent based on protected grounds. The Seventh Circuit's gone even farther and collected a bunch of cases on this point in United States versus Moore where they said you cannot attack a decision to initiate a prosecution based on irrationality or arbitrariness. The only equal protection claim you can raise is for invidious discrimination. But we don't even have to go that far because the cases that we've cited trying to say that we're similarly analogous to these people. As we showed, some of those cases involved Ponzi schemes where we needed an immediate TRO to free certain funds before they could be liquidated to protect the people at issue. And in other cases where they say, well, we're similarly situated to people alleged to have violated the same statutes as us, we've cited administrative proceedings where the respondent was alleged to have violated the same statute and that was brought in an administrative proceeding. So even accepting the theory for their claim, they haven't shown an equal protection violation. One quick final question. What I'm hearing on each of the objections about whether it's equal protection or non-delegation is that it's a question of whether to prosecute a person. Do you have an authority that the same unreviewable discretion that attaches to Heckler would also attach to the idea that you get to choose where he goes to trial? So I think that that's  question of whether to bring that action in an administrative proceeding or a district court. And the mere fact that the Secretary has that authority does not grant you similar authority or a basis to challenge the exercise of that authority. Thank you. Thank you, Your Honors. We've saved time for rebuttal. I'll try to talk fast. The, in no particular order, the Austin v. Shalala case, that's a Social Security case and that's a good illustration of what we were talking about earlier about how it was                of what we were talking about.       in this case. And the case is submitted. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.                   Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.